IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       v.<br><br>MARCO ANTONIO HERNANDEZ,<br><br>              Defendant. | Case No. 3:25-cr-072-1<br><br>**PLEA AGREEMENT** |

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Nicholas W. Chase, United States Attorney for the District of North Dakota, and Matthew P. Kopp, Assistant United States Attorney; Defendant, MARCO ANTONIO HERNANDEZ; and Defendant's counsel, Guy L. Womack, agree to the following:

1.      Defendant acknowledges the Superseding Indictment charges violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 924(c)(1)(A) and 1956(h).

2.      Defendant has read the charges and Defendant's attorney has fully explained the charges to Defendant.

3.      Defendant fully understands the nature and elements of the charged crimes.

4.      Defendant will voluntarily plead guilty to Counts One, Three, Four, and Six of the Superseding Indictment and admit to the forfeiture notice.

5.      The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties

specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6.     Defendant will plead guilty because Defendant is in fact guilty of the charges. In pleading guilty to Counts One, Three, Four, and Six of the Superseding Indictment, Defendant acknowledges that:

## COUNT ONE

**Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances**

From in or about January 2024 through the date of this Superseding Indictment, in the Districts of North Dakota, Minnesota, Southern Texas, Kansas, Western Missouri, and elsewhere,

MARCO ANTONIO HERNANDEZ, a/k/a KEVIN, a/k/a KAOZ HOUSTONE, did knowingly and intentionally combine, conspire, confederate, and agree together and with others, both known and unknown to the grand jury, to possess with intent to distribute and distribute mixtures and substances containing detectable amounts of methamphetamine and cocaine, Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

### Drug Quantity

The amounts involved in this conspiracy attributable to the defendants, as a result of their own conduct, and of the conduct of other conspirators reasonably foreseeable to

them, are 500 grams or more of a mixture and substance containing a detectable amount

of methamphetamine, and 5 kilograms or more of a mixture and substance containing a

detectable amount of cocaine, Schedule II controlled substances, in violation of Title 21,

United States Code, Section 841(b)(1)(A)(ii) and (viii).

Overt Acts

In furtherance of this conspiracy and to effect and accomplish its objects, one or

more conspirators committed the following overt acts:

1.     It was a part of said conspiracy that the defendants and others possessed

with intent to distribute and did distribute mixtures and substances containing detectable

amounts of methamphetamine and cocaine, Schedule II controlled substances, within the

states of North Dakota, Minnesota, Texas, Kansas, Missouri, and elsewhere;

2.     It was further a part of said conspiracy that the defendants and others would

and did attempt to conceal their activities;

3.     It was further a part of said conspiracy that the defendants and others would

and did use telecommunication facilities, including cellular telephones, to facilitate the

distribution of methamphetamine and cocaine;

4.     It was further a part of said conspiracy that the defendants and others would

and did use United States currency in their drug transactions;

5.     It was further a part of said conspiracy that the defendants and others sent

and received methamphetamine and cocaine through the United States mail;

6.     It was further a part of said conspiracy that the defendants and others sent and received payment for and proceeds of methamphetamine and cocaine sales through the United States mail;

7.     It was further a part of said conspiracy that one or more conspirators used peer-to-peer money transfer services, including but not limited to Cash App and Zelle, to send and receive payment for and proceeds of methamphetamine and cocaine sales;

8.     It was further a part of said conspiracy that one or more conspirators sent and received money wire transfers that were payment for and proceeds of methamphetamine and cocaine sales;

9.     It was further a part of said conspiracy that one or more conspirators used social media applications, including but not limited to Facebook, to facilitate the distribution of methamphetamine and cocaine;

10.    It was further a part of said conspiracy that one or more conspirators used encrypted messaging applications, including but not limited to WhatsApp, to facilitate the distribution of methamphetamine and cocaine;

11.    It was further a part of said conspiracy that one or more conspirators traveled between the states of North Dakota, Minnesota, Texas, Kansas, and Missouri to obtain, transport, and distribute methamphetamine and cocaine;

12.    It was further a part of said conspiracy that one or more conspirators possessed firearms during, in relation to, and in furtherance of the conspiracy;

13.    It was further a part of said conspiracy that one or more conspirators used violence, threatened violence, and used intimidation to protect their criminal activities;

4

14.     On or about August 7, 2024, one or more conspirators possessed with intent to distribute approximately 15 kilograms of methamphetamine and 571 grams of cocaine in Lawrence, Kansas;

15.     On or about October 9, 2024, one or more conspirators arranged for shipment through the United States mail of approximately 1,001 grams of cocaine from Houston, Texas, to Fargo, North Dakota, which a conspirator attempted to possess with intent to distribute;

16.     On or about March 26, 2025, MARCO ANTONIO HERNANDEZ, a/k/a KEVIN, a/k/a KAOZ HOUSTONE, possessed with intent to distribute approximately 11 kilograms of methamphetamine in Fargo, North Dakota;

17.     On or about April 24, 2025, a conspirator possessed with intent to distribute approximately 16 grams of methamphetamine and 38 grams of cocaine in Fargo, North Dakota;

18.     On or about October 11, 2024, a conspirator possessed firearms during, in relation to, and in furtherance of the conspiracy in Fargo, North Dakota;

19.     On or about March 26, 2025, MARCO ANTONIO HERNANDEZ, a/k/a KEVIN, a/k/a KAOZ HOUSTONE, possessed firearms during, in relation to, and in furtherance of the conspiracy in Fargo, North Dakota;

20.     On or about April 24, 2025, a conspirator possessed a firearm during, in relation to, and in furtherance of the conspiracy in Fargo, North Dakota;

21.    MARCO ANTONIO HERNANDEZ, a/k/a KEVIN, a/k/a KAOZ HOUSTONE, arranged for one or more conspirators to import controlled substances into the United States from Mexico;

22.    MARCO ANTONIO HERNANDEZ, a/k/a KEVIN, a/k/a KAOZ HOUSTONE, acted as a leader, organizer, manager, and supervisor in this conspiracy;

In violation of Title 21, United States Code, Section 846, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

## COUNT THREE

**Possession with Intent to Distribute a Controlled Substance**

On or about March 26, 2025, in the District of North Dakota,

MARCO ANTONIO HERNANDEZ, a/k/a KEVIN, a/k/a KAOZ HOUSTONE,

did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii), and Title 18, United States Code, Section 2.

## COUNT FOUR

**Money Laundering Conspiracy**

From in or about January 2024 through the date of this Superseding Indictment, in the Districts of North Dakota, Minnesota, Southern Texas, Kansas, Western Missouri, and elsewhere,

MARCO ANTONIO HERNANDEZ, a/k/a KEVIN, a/k/a KAOZ HOUSTONE,

did knowingly combine, conspire, confederate, and agree together and with others, both known and unknown to the grand jury, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce that involved the proceeds of specified unlawful activity, that is, a drug trafficking conspiracy: (1) with intent to promote the carrying on of that specified unlawful activity, and (2) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of that specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 2.

<u>Manner and Means</u>

The manner and means used to accomplish the objectives of this conspiracy included, among others, the following:

1.      The defendants and others possessed with intent to distribute and did distribute mixtures and substances containing detectable amounts of methamphetamine and cocaine, Schedule II controlled substances, within the states of North Dakota, Minnesota, Texas, Kansas, Missouri, and elsewhere;

2.      The defendants and others would and did conduct financial transactions by collecting and transferring United States currency that was payment for and proceeds of methamphetamine and cocaine sales;

3.      The defendants and others would and did conduct financial transactions by using peer-to-peer money transfer services, including but not limited to Cash App and

Zelle, to send and receive payment for and proceeds of methamphetamine and cocaine sales;

4.     The defendants and others would and did conduct financial transactions by sending and receiving money wire transfers that were payment for and proceeds of methamphetamine and cocaine sales;

5.     The defendants and others would and did conduct financial transactions by sending and receiving payment for and proceeds of methamphetamine and cocaine sales through the United States mail;

6.     The purpose of these financial transactions was to promote the ongoing drug trafficking conspiracy and to conceal and disguise the nature, location, source, ownership, and control of its proceeds;

In violation of Title 18, United States Code, Section 1956(h).

<u>COUNT SIX</u>

**Possession of Firearms in Furtherance of Drug Trafficking Crimes**

On or about March 26, 2025, in the District of North Dakota,

MARCO ANTONIO HERNANDEZ, a/k/a KEVIN, a/k/a KAOZ HOUSTONE,

did knowingly possess one or more firearms, namely:

- Anderson Manufacturing, Model AM-15, multi-caliber pistol, bearing Serial Number 21398476; and

- Smith & Wesson, Model M&P9, 9mm pistol, bearing Serial Number NFR9045,

in furtherance of drug trafficking crimes for which he may be prosecuted in a court of the United States, that is, the offenses alleged in Counts One and Three of this Superseding Indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

<u>FORFEITURE NOTICE</u>

Upon conviction of Counts One, Three, Four, and Six of the Superseding Indictment,

MARCO ANTONIO HERNANDEZ, a/k/a KEVIN, a/k/a KAOZ HOUSTONE, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982, all right, title, and interest in any property involved in the violation of Title 18, United States Code, Section 1956(h), or any property traceable to such property, and shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), all firearms involved in the violation(s) of Title 18, United States Code, Section 924(c)(1)(A), and shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, all right, title, and interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of the violation(s) of Title 21, United States Code, Sections 841(a)(1) and 846, and any property used or intended to be used in any manner or part, to commit, or to facilitate the commission of said violation(s), including but not limited to:

- Stag Arms, Model STAG-15, 5.56 caliber semi-automatic rifle, bearing Serial Number W-0051897;

- Rock Island Armory, Model M1911 A1-FS, .45 caliber pistol, bearing Serial Number RIA1779751;

9

- Glock, Model 27, .40 caliber pistol, bearing Serial Number MMR036;

- Ruger, Model LCP II, .22 caliber pistol, bearing Serial Number 380745239;

- Smith & Wesson, Model M&P Shield, 9mm pistol, bearing Serial Number HXL4921;

- Anderson Manufacturing, Model AM-15, multi-caliber pistol, bearing Serial Number 21398476;

- Smith & Wesson, Model M&P9, 9mm pistol, bearing Serial Number NFR9045;

- Springfield, Model XD-9, 9mm pistol, with an obliterated Serial Number;

- $2,039 in United States currency seized on or about October 11, 2024, in Fargo, North Dakota;

- $21,533 in United States currency seized on or about March 26, 2025, in Fargo, North Dakota;

- $28,500 in United States currency seized on or about March 27, 2025, in Fargo, North Dakota;

- 682 rounds of assorted ammunition seized on or about October 11, 2024, in Fargo, North Dakota;

- 72 rounds of assorted ammunition seized on or about March 26, 2025, in Fargo, North Dakota;

- Nine assorted caliber firearm magazines seized on or about October 11, 2024, in Fargo, North Dakota;

- Two assorted caliber firearm magazines seized on or about March 26, 2025, in Fargo, North Dakota; and

- One black ballistic vest seized on or about April 24, 2025, in Fargo, North Dakota.

If any of the forfeitable property as a result of any act or omission of a defendant:

    (a)    cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under Title 21,

United States Code, Section 853(p), to seek forfeiture of any property of said defendants

up to the value of the forfeitable property.

7.     Defendant understands the following maximum penalties apply:

<u>Count One</u>

| | |
|---|---|
| Imprisonment: | Life; 10-year minimum mandatory |
| Fine: | $10,000,000 |
| Supervised Release: | Life; 5-year minimum mandatory |
| Special Assessment: | $100 |

<u>Count Three</u>

| | |
|---|---|
| Imprisonment: | Life; 10-year minimum mandatory |
| Fine: | $10,000,000 |
| Supervised Release: | Life; 5-year minimum mandatory |
| Special Assessment: | $100 |

<u>Count Four</u>

| | |
|---|---|
| Imprisonment: | 20 years |
| Fine: | $500,000 |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |

<u>Count Six</u>

| | |
|---|---|
| Imprisonment: | Life; 5-year minimum mandatory consecutive |
| Fine: | $250,000 |
| Supervised Release: | 5 years |
| Special Assessment: | $100 |

Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

8.    Defendant understands that by pleading guilty Defendant surrenders rights, including:

(a)    The right to a speedy public jury trial and related rights as follow:

(i)    A jury would be composed of twelve (12) lay persons selected at random. Defendant and Defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed that Defendant is presumed innocent and that it could not return a guilty verdict unless it found Defendant guilty beyond a reasonable doubt.

(ii)    If a trial were held without a jury, the Judge would find facts and determine whether Defendant was guilty beyond a reasonable doubt.

(iii)    At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against Defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for Defendant refuse to appear voluntarily, Defendant can require their attendance through the subpoena power of the Court.

(iv)    At a trial, Defendant has a privilege against self-incrimination; thus, Defendant can decline to testify. No inference of guilt can be drawn from Defendant's refusal to testify. Defendant can choose to testify but cannot be required to testify.

(b)    Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask Defendant questions about Defendant's criminal conduct to ensure that there is a factual basis for Defendant's plea.

9.    Defendant understands that by pleading guilty Defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of Defendant's waiver.

10.    The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a) and must consult and consider the United States Sentencing Commission, Guidelines Manual, (Nov. 2025) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States reserves the right to appeal from an unreasonable sentence.

11.    This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free

to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12.    Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

13.    The parties agree that the base offense level under the Sentencing Guidelines for Defendant's conduct is 38. (USSG § 2D1.1(c)(1) – conspiracy foreseeably involving 90,000 kilograms or more of converted drug weight). The parties further agree that the following upward adjustments apply:

- +4 for organizer or leader of criminal activity involving five or more participants. (USSG § 3B1.1(a)).

- +2 for money laundering. (USSG § 2S1.1(b)(2)(B)).

- +2 for obstruction of justice. (USSG § 3C1.1).

The parties further agree that the Guideline range for Count Six is 60 months consecutive to any other term of imprisonment imposed. (USSG § 2K2.4(b)). The United States reserves the right to argue a higher offense level at sentencing if the pre-sentence investigation determines that Defendant is a "career offender" under USSG § 4B1.1.

14.    At sentencing, the United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)). The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the

United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15. The parties stipulate and agree that, as of the date of this agreement, Defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should Defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16. Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may apply other adjustments the parties have not agreed upon. The parties reserve the right to argue for or object to any adjustment not otherwise agreed upon or waived in this plea agreement.

17. At sentencing, the United States will recommend a sentence of 360 months of imprisonment on Count One and 60 months of imprisonment consecutive on Count Six, with any sentence on Counts Three and Four concurrent with Count One.

18. Defendant acknowledges and understands that if Defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event,

this Plea Agreement shall become null and void at the discretion of the United States, and Defendant will face the following consequences: (1) all testimony and other information Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against Defendant and to use any information obtained directly or indirectly from Defendant in those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

19.     Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct, regardless of whether counts of the Superseding Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

20.     The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

21.    **Defendant's Waiver of Appeal**. Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby knowingly and voluntarily waives these rights, except as specifically reserved herein. Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack:  Defendant's conviction or sentence; all non-jurisdictional issues; any assessment, restitution or forfeiture order; the constitutionality of the applicable guidelines; and the constitutionality of the statute(s) to which Defendant is pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver.

22.    By signing this Plea Agreement, Defendant further specifically waives Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. Defendant agrees that any

attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

23.     Defendant understands that by pleading guilty he will be convicted, and that any individual convicted who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of his guilty plea.

24.     The Assistant United States Attorney and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

25.     Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:


[SIGNATURE PAGE TO FOLLOW]


18

NICHOLAS W. CHASE
United States Attorney

Dated: _____1/20/2026_____

By: MATTHEW P. KOPP
Assistant United States Attorney

Dated: 1/16/26

MARCO ANTONIO HERNANDEZ
Defendant

Dated: 1/16/26

GUY L. WOMACK
Attorney for Defendant

19